## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MEGHAN A. MILLER, <br> ████████████████ <br> ██████████ , <br><br> *Plaintiff,* <br><br> v. <br><br> PETE HEGSETH, Secretary, <br> U.S. Department of Defense, <br> 1400 Defense Pentagon, <br> Washington, DC 20310-1400 <br><br> Serve: <br><br> United States Attorney's Office <br> for the District of Columbia, <br> Attn: Civil Process Clerk <br> 555 4th St., NW <br> Washington, DC 20530, <br><br> Pamela Bondi, Attorney General, <br> 950 Pennsylvania Avenue, NW <br> Washington, DC 20530-0001, <br><br> *Defendant.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Meghan A. Miller, through counsel, files this civil complaint and jury demand for violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, as applicable to Defendant U.S. Department of Defense ("DoD").

### Jurisdiction and Venue

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as it asserts claims that arise under the Constitution, law or treaties of the United

States, specifically the Rehabilitation Act of 1973.

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(e)(1) and 5 U.S.C. § 703 because and all actions giving rise to the complaint occurred in Washington, D.C.

**Exhaustion of Remedies**

3. Ms. Miller exhausted her administrative remedies for the claims she brings in this Complaint.

4. On December 1, 2021, Ms. Miller filed a formal complaint of discrimination, identified as Agency No. DIA-2021-00054, alleging officials at the U.S. Defense Intelligence Agency ("DIA" or "Agency") harassed her and discriminated against her based on disability and reprisal, to include terminating her employment.

5. On December 12, 2022, Ms. Miller requested a hearing before the U.S. Equal Employment Opportunity Commission ("EEOC"), which identified her complaint as EEOC Hearing No. 570-2023-00272X. Following a hearing, an Administrative Judge determined that the Agency was not liable; a determination upheld by the EEOC's Office of Federal Operations (now referred to as the Office of Federal Sector).

**Parties**

6. Plaintiff Meghan A. Miller resides in ████████████. The Defendant employed Ms. Miller as Technical Collection Officer, GG-12, within the Future Capabilities Innovation Office (FCI), Directorate Science and Technology Directorate (ST), DIA, DoD.

7. Defendant Pete Hegseth is being sued in his official capacity as Secretary of DoD, which committed discriminatory and retaliatory acts giving rise to this action.

8. Defendant is subject to suit for the discriminatory acts of its employees or agents, committed during the course and in the scope of their employment at DoD. Therefore, Defendant

is liable under the doctrine of *respondeat superior*.

**FACTUAL ALLEGATIONS**

9.      On 29 March 2021, DIA hired Ms. Miller as a Technical Collection Officer, GG-12, subject to a 2-year probationary period, within the Future Capabilities Innovation Office (FCI), Directorate Science and Technology Directorate (ST). Deborah Melancon, then Deputy Chief of ST, was her first-line supervisor. Dr. Michael Lansdown, Chief Scientist, was her second-line supervisor.

10.     In April 2021, the Agency assigned Ms. Miller to a high-profile working group (WG) focused on determining causation for Havana Syndrome in the Directorate of Operations (DO). Ms. Miller reported to Lieutenant Colonel (LTC-since retired) Gregory Edgreen, Chief of the WG, who she worked for full-time.

11.     On 30 June 2021, after returning from surgery, Ms. Miller sent an email to EO Reasonable Accommodations, Colby Dillard, Disability Program Manager, and Ms. Melancon requesting a standing desk as a reasonable accommodation.

12.     On 14 July 2021, the Agency granted Ms. Miller accommodation of a standing desk, with an effective date of 25 August 2021.

13.     On 10 August 2021, Ms. Melancon sent an email to COL Jeffrey M, who was over LTC Edgreen, copied to Dr. Lansdown, stating that Mr. Miller would "no longer participate or support the WG."

14.     LTG Edgreen testified that Ms. Miller's performance was outstanding, but that COL M told him that Ms. Melancon "demanded that either we swap Ms. Miller immediately," to create an open billet or return Ms. Miller no later than 15 September 2021.

3

15. On 13 August 2021, Ms. Melancon sent Ms. Miller an email telling her to develop "a transition plan" adding "You will no longer participate in the support of the WG ..."

16. On 24 August 2021, Ms. Melancon issued Ms. Miller a Letter of Counseling for alleged "unprofessional behavior, not following communication protocols, and failing to complete and participate in specific tasks." That same day, Ms. Melancon reassigned Ms. Miller to work in Reston, VA, instead of Headquarters in Washington, DC, and Ms. Miller replied by explaining. "I wouldn't medically be able to do that because that's at least a 45-minute drive without traffic. And at the time … I couldn't sit for that long without suffering potentially very bad consequences per my surgeon …" Ms. Melancon sent an email to EO Reasonable Accommodations stating that Ms. Miller would be working from Reston, and that, "She informed me she requires a sit-stand desk and possible parking accommodation before she moves," although by this time, Ms. Miller had an approved accommodation for both which was to go into effect the very next day.

17. Also on 24 August 2021, again - one day before the Agency was to effect Ms. Miller's accommodation - the Agency ordered the standing desk.

18. On 25 August 2021, Ms. Melancon sent an email to Dr. Lansdown, subject "For the record," in which she stated, inter alia, that, "We also discussed Reston duty station. She will submit an EO accommodation." On 27 August 2021, Ms. Miller submitted that request.

19. On Ms. Miller's first day back at ST, 1 September 2021, at 8:31 a.m., Katherine Prada, a co-worker, sent an email to Ms. Dillard and others explaining that she has a standing desk Ms. Miller could use for a month. Ms. Miller forwarded the email to her management at 8:57 a.m., and explained that she, "reached out to Ms. Prada to attempt to find a solution for myself as directed," and stating that, " it is my understanding … that the standing desks were not ordered until yesterday 30 August 2021 and as, pardon the graphic description, I have already had 4 stitches

4

break from sitting for too long, I would greatly appreciate the assistance in moving the standing desk so that further physical damage does not occur." At 9:40 a.m., Ms. Melancon sent an email to Ms. Miller that "a work order has been submitted with a suspense of 10 September. There is more to the installation than simply moving the desk," and later added that Ms. Miller has "been approved to use your current desk through 10 September…"

20.    At 9:53 a.m., responding to Ms. Miller's email about a security issue, Ms. Melancon sent Ms. Miller an email stating, "This is a failure to follow instructions, per Dr. Lansdown email Tuesday, August 31, 2021 … and my email Wed 9/1/2021 8:21 AM." Ms. Miller asked her to explain how she failed to follow instruction, but one minute later, at 9:54 a.m., Ms. Melancon replied to another email stating, without explanation, "This is a failure to follow instructions." Ms. Miller asked her to elaborate, but Ms. Melancon did not reply.

21.    Later that day, 1 September 2021, Ms. Miller contacted an EEO Counselor. Ms. Miller then requested Alternative Dispute Resolution (ADR).

22.    On 7 September 2021, Kristi Holmes-Smith, ADR Practitioner with EEO, held a session with Ms. Miller and Ms. Melancon, which did not result in an agreement.

23.    Following the ADR, Ms. Miller wrote a rebuttal to the Letter of Counseling. Ms. Melancon accused Ms. Miller of "lying" in her rebuttal and alleged that Ms. Miller "used the confidentiality of our ADR agreement to say untruths."

24.    Around this same time in mid-September 2021, Dr. Lansdown began collecting adverse information on Ms. Miller. For example, on 16 September 2021, Paul F. sent Dr. Lansdown an email concerning an incident that allegedly occurred on 9 August 2021, ending by asking Dr. Lansdown to let him know "whether or not this is sufficient." On 13 October 2021,

Thomas H., Director in ST, sent an email at Dr. Lansdown's request to his superior concerning Ms. Miller.

25.     On 21 September 2021, Zoraida Younger, EO Reasonable Accommodations, sent an email to Ms. Miller and Ms. Melancon to schedule an Interactive Accommodation Process (IAP) meeting. Dates for the IAP between 27-30 September 2021, were discussed, but Ms. Melancon cancelled saying the meeting was unnecessary.

26.     On 30 September 2021, Ms. Miller send an email to the EEO Counselor alleging that Ms. Melancon "admitted to trying to circumvent the EO process" by using her friendship with Ms. Dillard, which the EEO Counselor then forwarded to Ms. Dillard.

27.     On 20 October 2021, the EEO Counselor interviewed Ms. Melancon.

28.     On 27 October 2021, Ms. Melancon emailed Ms. Miller stating, "DO's goodwill has been exhausted as they need to use the space for DO employees," and suggested options including working full time in Reston, teleworking, or a combination. Ms. Miller replied that she found a space in DO to use until 1 December 2021, but Ms. Melancon replied, that "is not an option." Ms. Miller asked around and emailed back stating another employee "offered a desk at HQ starting Monday 1 November 2021 until ST/EO can find me a desk," and Ms. Melancon said she would inquire further. At the EEOC hearing, Ms. Melancon alleged, despite signing Ms. Miller's reasonable accommodation form, that she did not know that Ms. Miller sought accommodation for a disability saying, "I don't think that it was a medical concern as far as the distance to be able to travel to Reston…I don't think … I understood … that physically, medically, she was unable … to drive to Reston."

29.     The following day, 28 October 2021, Ms. Melancon informed Ms. Miller that "ST was able to secure a workspace in DIA HQ expansion building," but when Ms. Miller asked if this

would be her permanent space, Ms. Melancon replied it was secure for at least the next 30 days. Ms. Miller testified that it was an open space with loud construction noise.

30.     On 1 November 2021, Ms. Miller suffered a traumatic brain injury (TBI), which was suspected to be caused by an Anomalous Health Incident (AHI).

31.     On 2 November 2021, Ms. Melancon sent an email to EO Reasonable Accommodations, copied to Dr. Lansdown stating, "At this time the only RAs documented are for parking and standing desk," and that "After 30 days ST would like to assign officer to Reston duty location Reston." EO Reasonable Accommodations replied that Ms. Miller was granted an additional accommodation of a "Temporary Seat Reassignment at HQ DIAC until June 2022," stating that "Seating in Reston goes against the granted accommodation."

32.     Ms. Melancon confirmed that by 4 November 2021, she knew that Ms. Miller had most likely suffered an AHI. HT2 at 315.

33.     On 16 November 2021, Ms. Melancon alleged Ms. Miller failed to follow her instructions. Also on 16 November 2021, Ms. Melancon and Dr. Lansdown rated Ms. Miller for the performance period ending on 30 September 2021, as "Successful" on her performance objectives and "Minimally Successful" on five of six performance elements including technical expertise, which she was rated Successful on as a performance objective.

34.     Ms. Miller requested reconsideration of her appraisal indicating that the performance checkpoints never happened despite Ms. Melancon recording that they did; and that from 29 March 2021, to 1 September 2021, her Performance Objectives pertained to the WG.

35.     Maj Melissa Moses, who assisted employees suffering AHIs, recalled "a string of emails going back and forth" between Ms. Miller and Ms. Melancon where Ms. Miller "is trying to explain she's not going to be able to meet a deadline due to … her physical symptoms," and

Ms. Melancon "basically said I don't care. You know, you're at work, you can figure it out." Maj Moses added that Ms. Melancon asked what she could do to support Ms. Miller, and "then did the exact opposite…"

36.     On 29 November 2021, John E. Kirchhofer, DIA's Chief of Staff, sent a Request for Medical support to the Office of the Assistant Secretary of Defense for Health Affairs requesting that the Agency grant Ms. Miller "12 months of Secretarial Designee status," to permit her to access additional medical care.

37.     On 14 December 2021, Dr. Lansdown sent an email to Human Resources with an Action Memo attached to terminate Ms. Miller. ROI at 1282. In the Action Memo, Dr. Lansdown alleged that Ms. Miller failed to meet performance objectives that had never been issued, and which differed from those presented to Ms. Miller as she was returning to ST.

38.     On 15 December 2021, Ms. Miller sent an email to Ms. Melancon, copied to Dr. Lansdown stating asking for an extension from 3 to 10 January 2022, and stating, "I will need to put in for a reasonable accommodation," and "will need to discuss how best to do this with OSG."

39.     Ms. Melancon denied the extension request, stating, "Please submit the following NLT COB 3 January." Ms. Miller then replied stating, "I do not believe given my current physical and mental capabilities," among a lack of resources, that she can complete the task by the deadline. *Id*. Ms. Melancon responded, "I am not aware of any limitations to your time or ability in completing this task." *Id*. Ms. Miller explained that "for health reasons," she needed a few extra days, and Ms. Melancon replied the suspense remains 3 Jan 2022. Ms. Miller then contacted EEO.

40.     The same day, 15 December 2021, Ms. Miller sent an email to EO Reasonable Accommodations, copied to Maj Moses, stating, "I will need to put in for a reasonable accommodation however, due to multiple instances of my personal medical information being

shared without my knowledge or consent, I would like my chain of command to be kept off any correspondence." Also, that day, DoD approved Secretarial Designee status for Ms. Miller.

41. By 23 December 2021, Ms. Miller emailed Maj Moses back to say that nobody from EO Reasonable Accommodations had contacted her yet. ROI at 1041.

42. On 11 January 2022, Ms. Miller followed up with her request for reasonable accommodation, and after some back and forth, Ms. Miller explained she was seeking leeway on deadlines.

43. On 13 January 2022, Ms. Dillard replied to Ms. Miller that Ms. Miller's "chain of command will need to acknowledge your request for accommodation via the written request form," because she knew from reviewing the medical documentation that Ms. Miller was requesting "non-tangible items" as an accommodation.

44. On 18 January 2022, Ms. Miller sent an email to Ms. Dillard explaining her symptoms and that she has "secretarial designation for treatment." Ms. Miller then stated, "The reasonable accommodation I am requesting can be relatively vague but requires some flexibility/understanding for deadlines given the above stated enduring symptoms."

45. On 25 January 2022, the Agency terminated Ms. Miller.

## CAUSES OF ACTION

### COUNT I
### (Disability Discrimination)

46. Plaintiff incorporates by reference herein paragraphs 1–45 of this Complaint.

47. The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*., prohibits employers from discriminating against employees because of disability and requires employers to accommodate qualified individuals with disabilities.

48.    Defendant subjected Plaintiff to discrimination when the Agency failed to reasonably accommodate her and then terminated her.

49.    As a result of Defendant's actions, Ms. Miller suffered and continues to suffer harm.

## COUNT II
### (Retaliation for Protected Activity in Violation of the Rehabilitation Act)

50.    Plaintiff incorporates by reference herein paragraphs 1–49 of this Complaint.

51.    Plaintiff engaged in protected activity when she requested reasonable accommodation, participated in the interactive process, and filed the EEO complaint underlying this Complaint.

52.    Defendant retaliated for prior protected activity when it terminated Plaintiff's employment.

53.    The temporal and substantive proximity of Defendant's actions in relation to Plaintiff's protected activities establish a sufficient causal connection to establish a *prima facie* case of reprisal.

54.    DoD's actions would dissuade a reasonable employee from engaging in protected activity.

55.    As a result of Defendant's actions, Ms. Miller suffered and continues to suffer harm.

## RELIEF REQUEST

Wherefore, Plaintiff, by and through counsel, respectfully requests that this Court:

(1) hold that the Defendant subjected Plaintiff to discrimination and reprisal;

(2) award damages in an amount to be determined at trial, in addition to prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but

10

not limited to compensation for severe emotional distress; humiliation; embarrassment; and loss of professional standing, reputation and opportunities;

(3) award damages in an amount to be determined at trial, in addition to prejudgment interest, to compensate Plaintiff for all economic damages, including but not limited to lost past and future income, service credit, and other employment benefits;

(4) reverse Defendant's decision to terminate Plaintiff and reinstate her retroactively with back pay and benefits;

(5) grant Plaintiff an award of reasonable costs and attorney fees incurred in this civil action pursuant to 28 U.S.C. § 412; and

(6) grant Plaintiff such other relief as the Court deems just and proper.

## JURY DEMAND

56.     Plaintiff demands a trial by jury on all triable issues set forth herein.

Dated: July 16, 2026                             Respectfully submitted,


/s/

_____
Debra D'Agostino
Federal Practice Group
D.C. Bar No. 481942
801 17th Street, N.W., Suite 250
Washington, DC 20006
Phone: (202) 862-4360
Fax: (888) 899-6053
ddagostino@fedpractice.com

*Counsel for Plaintiff*